## RESPUBLICA *v.* ABRAHAM CARLISLE.

### *Indictment for treason.*

Indictment for treason: The *overt* act laid was taking a commission from the enemy : evidence was admitted to show that the defendant had a power of granting passes into, and out of, the city, then in possession of the enemy.

It is sufficient, in such indictment, to lay, that the defendant sent intelligence to the enemy, without setting forth the particular letter or its contents.

THIS was an indictment for High Treason, which was set forth in the following words :

" The jurors for the commonwealth of Pennsylvania, upon their oaths and affirmations, do present, that Abraham Carlisle, late of the city of Philadelphia, in the county of Philadelphia, carpenter, being an inhabitant of, and belonging to, and residing within, the state of Pennsylvania, and under the protection of its laws, and owing allegiance to the same state, as a false traitor against the same, not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, the fidelity which to the same state he owed wholly withdrawing, and with all his might intending the peace and tranquillity of this commonwealth of Pennsylvania to disturb, and war and rebellion against the same to raise and move, and the

---

(*a*) See the next case and Respublica *v.* Roberts, *post*, p. 39.

government and independency thereof, as by law established, to subvert, and to raise again and restore the government and tyranny of the king of Great Britain within the same commonwealth : On the first day of January, in the year of our Lord one thousand seven hundred and seventy-eight, and at divers days and times, as well before as after, at the city of Philadelphia, in the county aforesaid, with force and arms, did falsely and traitorously take a commission or commissions from the king of Great Britain, and then and there, with force and arms did falsely and traitorously also take a commission or commissions from Gen. Sir William Howe, then and there acting under the said king of Great Britain, and under the authority of the same king, to wit, a commission to watch over and guard the gates of the city of Philadelphia, by the said Sir William Howe, erected and set up for the purpose of keeping and maintaining the possession of the said city, and of shutting and excluding the faithful and liege inhabitants and subjects of this state and of the United States from the said city : And then and there also maliciously and traitorously, with a great multitude of traitors and rebels, against the said commonwealth (whose names are yet unknown to the jurors), being armed and arrayed in a hostile manner, with force and arms did falsely and traitorously, assemble and join himself against this commonwealth, and then and there, with force and arms, did falsely and traitorously, and in a warlike and hostile manner, array and *dispose himself against this commonwealth ; and then and there, in pursuance and execution of such his wicked and traitorous intentions and purposes aforesaid, did falsely and traitorously prepare, order, wage and levy a public and cruel war against this commonwealth ; then and there committing and prepetrating a miserable and cruel slaughter of and amongst the faithful and liege inhabitants thereof ; and then and there did, with force and arms, falsely and traitorously aid and assist the king of Great Britain, being an enemy at open war against this state, by joining his armies, to wit, his army under the command of Gen. Sir William Howe, then actually invading this state ; and then and there maliciously and traitorously (with divers other traitors to the jurors aforesaid unknown), with force and arms, did combine, plot and conspire to betray this state, and the United States of America, into the hands and power of the king of Great Britian, being a foreign enemy to this state, and to the United States of America, at open war against the same ; and then and there did, with force and arms, maliciously and traitorously give and send intelligence to the same enemies for that purpose, against the duty of his allegiance, against the form of the act of assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania."

The *Attorney-General* offering a witness to prove, that the defendant had taken a quantity of salt from persons whom he termed *rebels*, as they were passing out of the city of Philadelphia; and that he had a power of granting passes ; his counsel objected, that this was impertinent to the *overt* act laid in the indictment, and therefore not admissible. 2 Wils. 148-9. It was urged, that at common law, no evidence could be given of a fact, which was not stated in the declaration. L. N. P. 21, 192-3. And that this caution, with respect to the *allegata et probata*, in a civil cause, ought, *à fortiori*, to be exercised in a capital prosecution. The overt act must be particularly

Respublica v. Carlisle.

laid, and strictly proved.   1 Hale H. P. C. 121.   For, justice requires that the defendant should be fully apprised of the charge, so that he may have an opportunity of encountering it with his evidence.   When, indeed, one *overt* act is established, evidence may be given of another *overt* act, relative to the same treason, but not before.   The only *overt* act laid in the present indictment, is taking a commission; and it is no proof of the defendant's taking a commission, that he seized the salt in question, or possessed a power or authority to let people out of the city.   Merely to say, likewise, that he was aiding and assisting the enemy, without laying something more, is no offence; to ascertain the crime, it must be *by* joining the armies of the enemy; *by* furnishing them with provisions; *by* enlisting, *or* procuring others to enlist in their troops, or *by* carrying on a traitorous correspondence with them. The aiding and assisting is the *treason*, but these are the *overt* acts, which must be laid and proved, in order to convict the defendant of the charge.

The *Attorney-General*, in reply, observed, that by the pleadings in a civil action, the issue must be reduced to a single point; and he admitted that in all indictments for treason, an *overt* act must be laid* and proved.   $[$*37 But, he contended, that it was unnecessary to fill the indictment with a detail of the whole evidence in support of the prosecution; for if the charge is reduced to a reasonable certainty, it is all that justice can require, and it is all that is to be found in any former precedent.   Divers *overt* acts may, also, be laid in the same indictment; and, though some of them are faulty, if one be well proved, it is sufficient to entitle the commonwealth to a verdict.   Where a person was charged with compassing the king's death, evidence was allowed to be given of the prisoner's assembling with forty men, though that *overt* act was not laid in the indictment.   Fost. 245; Id. 9, 10, 22.   As to what **amounts** to levying war, it is said, Id. 216, that the joining with rebels in an act of rebellion, or with enemies in an act of hostility, will make a man a traitor.   So, likewise, shutting gates against the king or his troops, *in confederacy with enemies*, or rebels, comes within the same description of treason.   Id. 218.   And the same *overt* act may be applied to several distinct branches of treason, Id. 196, 7, 8, where, it appears that Lord Preston's taking boat at Surrey stairs, with the intention of carrying treasonable papers into France, for treasonable purposes, was a sufficient *overt* act in Middlesex, to maintain the indictment there.   Id. 217, 218.   The form of the present indictment is similar to that against Eneas McDonald.   Id. 5.   The charge of levying war is made in the same manner, as in the proceedings against the rebels in the year 1746.   And the arraying and marching are also laid agreeable to the terms of all the precedents.

The Chief Justice delivered the opinion of the court to the following effect:

McKEAN, Chief Justice.—There are three species of treason in Pennsylvania ;(a)   First.   To take a commission or commissions from the king of Great

---

(a) An act of assembly, passed the 3d December 1782, has increased the number of treasons, by declaring that "erecting or endeavoring to erect a new and independent government, within this commonwealth"—and also "setting up any notice, written or printed, calling the people together for that purpose," are acts of high treason.   **See 2** Sm. L. 61.   And see 1 Id. 435; 2 Id. 531; 3 Id. 186.

Respublica v. Carlisle.

Britain, or any under his authority: 2. To levy war against the state or government thereof: and 3. Knowingly and willingly to aid and assist any enemies at open war against this state, or the United States of America. With respect to this third species of treason, the legislature has further explained the meaning of the words, *aiding and assisting*, to be, "by joining the armies of the enemy, or by enlisting, or procuring or persuading others to enlist, for that purpose; or by furnishing such enemies with arms or ammunition, provision or any other article or articles for their aid or comfort, or by carrying on a traitorous correspondence with them." All these several species of treason are laid in this indictment.

*38]     *It is here particularly stated, that the defendant took a commission under the king of Great Britain, to watch and guard the gates of the city of Philadelphia; and the offence is certain enough in this description, though, without some *overt* act, it would not be sufficient for a conviction. In order to prove an *overt* act, however, evidence has been offered to show that the prisoner had a power of granting passes into and out of the city, which was at that time in the possession of the enemy. In Fost. 10 (*Berwick's Case*), a witness deposed, that one Berwick was confined in the room assigned for the rebel officers taken at Carlisle by the duke of Cumberland, and this was deemed a sufficient proof of his holding a commission. The court, on the present occasion, however, are of opinion, that the evidence which is offered, ought to be received, but not as conclusive proof of the defendant's having taken a commission. Nor will the evidence of seizing the salt, or any act of disarming the inhabitants whom the defendant called *rebels*, apply to *this* species of treason; however they may support the allegation, of his having joined the armies of the king of Great Britain.

We think it is sufficient, also, to lay in the indictment, that the defendant sent intelligence to the enemy, without setting forth the particular letter, or its contents; and, though the charge of levying war is not, of itself, sufficient; yet assembling, joining and arraying himself with the forces of the enemy, is a sufficient *overt* act of levying war.

By the Court.—Let the witness be sworn.

The *Attorney-General* and *Reed*, for the Commonwealth. *Ross* and *Wilson*, for the defendant.

The defendant being convicted by the verdict of the jury, his counsel filed the following reasons in arrest of judgment:

1. For that the indictment is vague and uncertain, there being no *overt* act expressly or particularly ascertained, as the prisoner is advised it ought to be.

2. For that the formal part of the indictment is not drawn with sufficient precision.

3. For that the several facts are so uncertainly charged, that the prisoner could not be apprised of the particulars urged against him.

4. That the whole wants form and substance.

These reasons were elaborately discussed on the 5th of October 1778, by the same counsel on both sides. But, upon mature consideration, they were finally overruled by the Court, who gave judgment for the Commonwealth; and the defendant, a short time afterwards, was accordingly executed.